Filed 3/13/24  P. v. Tran CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>THO HOANG TRAN,<br><br>    Defendant and Appellant. | G061913<br><br>(Super. Ct. No. 94SF0646)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed.

Patrick Morgan Ford for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

In 1995, Tho Hoang Tran pleaded guilty to multiple felonies and was sentenced to seven years in prison. He was not a United States citizen, and his convictions carried adverse immigration consequences. In 2022, Tran moved to vacate his convictions under Penal Code section 1473.7, subdivision (a)(1), asserting he had been unaware of the immigration consequences of his plea and would not have entered the plea had he been aware.[1] Following a hearing, the trial court denied his motion. Tran challenges this ruling, and we affirm, concluding he did not carry his burden to show he did not understand the immigration consequences of his plea.

FACTS

I. *Tran's 1995 Convictions*

In December 1994, the Orange County District Attorney charged Tran, Johnny Nguyen, and another co-defendant with two counts of second degree robbery, three counts of assault with a firearm, and three counts of false imprisonment, with firearm enhancements. The charges carried a maximum penalty of 13 years 4 months in prison. In May 1995, Tran pleaded guilty as charged pursuant to a plea agreement and received a stipulated sentence of seven years in prison.

Before pleading guilty, Tran initialed and signed a plea form containing advisements and waivers of various rights (the *Tahl* form).[2] Among the statements Tran initialed was the following acknowledgement: "I understand that if I am not a citizen of the United States, the conviction for the offense charged may have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization . . . ."

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     *In re Tahl* (1969) 1 Cal.3d 122.

## II. *Tran's Section 1473.7 Motion*

In 2021, Tran decided to apply for United States citizenship, but after seeking legal advice, he learned that his 1995 convictions would prevent him from obtaining citizenship. In 2022, Tran moved to vacate his conviction under sections 1473.7, subdivision (a)(1), contending his plea counsel had not properly advised him of the immigration consequences of his plea.[3] In support, he submitted multiple declarations.

In his own declaration, Tran related that he was born in Vietnam in 1973 and came to the United States in 1979. He noted that at the time of his conviction in 1995, he was 21 years old and a lawful permanent resident. Tran claimed he accepted the plea deal he was offered based on his plea counsel's advice. He asserted that he "did not fully speak English at the time" and that plea counsel "did not provide a translator during any stage" of his case. Tran said plea counsel did not properly discuss with him the immigration consequences of the plea, despite knowing that he was not a citizen. According to Tran, had he been aware of the immigration consequences, he "would have made a much different decision."

Jo-Anna Nieves, the attorney who prepared Tran's motion, said in her declaration that Tran's plea counsel "spoke to a previous member of [Nieves's] team, Kathleen Dyer, . . . and relayed to her that he did not in fact warn . . . Tran of proper immigration concerns." (Boldface and underscoring omitted.) Finally, Nguyen, Tran's co-defendant in 1995, recounted in his declaration that Tran's plea counsel initially represented him as well. According to Nguyen, he doubted counsel's ability to represent him and obtained separate counsel. While they shared representation, Tran's plea counsel

---

[3]     As discussed further below, section 1473.7, subdivision (a)(1), allows noncitizens who have served their sentences to have a conviction vacated if it is "legally invalid due to prejudicial error damaging [their] ability to meaningfully understand . . . the actual or potential adverse immigration consequences of a conviction."

spoke to them very briefly and did not mention any potential immigration consequences. Even after obtaining separate representation, Nguyen never heard Tran's plea counsel mention any immigration consequences. Nguyen was ultimately able to produce a credible alibi, which resulted in the dismissal of charges against him.

III. *Hearing and Ruling*

At Tran's request, the trial court held an evidentiary hearing. At the hearing, Tran testified he left Vietnam when he was four years old and came to the United States when he was six. According to Tran, at the time of his conviction, his parents and other family members lived in the United States, and he had a child who was a United States citizen. He had only brief conversations with his plea counsel, who never asked about his immigration status, and Tran did not know a conviction could affect his immigration status. Plea counsel merely told Tran what his sentence would be under the plea agreement and showed him where to sign the *Tahl* form. Tran took the plea deal because he "had no money for a real attorney, . . . and it didn't seem like [his attorney] was . . . really fighting hard," so he just gave up. He probably would not have taken the deal if he had been aware of the immigration consequences. On cross-examination, Tran acknowledged that he attended elementary school in the United States and admitted he fully understood English at the time of his plea.

Nguyen testified about the 1995 proceedings. He claimed he, Tran, and the other co-defendant were picked in photo and in-person lineups and there was no other evidence against them. Nguyen said he had seen Tran's plea counsel speak with Tran only briefly and only before court appearances.

Following the hearing, the trial court denied Tran's motion under section 1473.7 for "failure to show prejudicial error." Tran timely appealed.

4

DISCUSSION

Tran contends the trial court erred by denying his motion under section 1473.7. As explained below, we conclude Tran was ineligible for relief because he failed to show that he did not understand the immigration consequences of his plea.

I. *Governing Principles*

"Penal Code section 1473.7[, subdivision (a)(1),] allows noncitizens who have served their sentences to vacate a conviction if they can establish by a preponderance of the evidence that their conviction is 'legally invalid due to prejudicial error damaging [their] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.' [Citations.]" (*People v. Espinoza* (2023) 14 Cal.5th 311, 316.) To obtain relief, "[t]he defendant must first show that he did not meaningfully understand the immigration consequences of his plea." (*Id.* at p. 319.) "Next, the defendant must show that his misunderstanding constituted prejudicial error," meaning there was a reasonable probability that the defendant would have rejected the plea had the defendant correctly understood its immigration consequences. (*Ibid.*)

Appeals from a trial court's rulings on motions under section 1473.7 are subject to independent review. (*People v. Vivar* (2021) 11 Cal.5th 510, 524.) "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.'" (*Id.* at p. 527.) This standard is not the equivalent of de novo review. (*Ibid.*) "[W]hen the trial court's findings 'derive entirely from written declarations and other documents,' the trial court and the reviewing court '"are in the same position,"' and no deference is owed. [Citation.]" (*People v. Espinoza, supra*, 14 Cal.5th at p. 320.) But when the trial court's findings are based on the credibility of witnesses it heard and observed, a reviewing court must give "particular deference" to those findings. (*Vivar,* at pp. 527-528.)

5

## II. *Analysis*

The trial court did not err by denying Tran's motion under section 1473.7 because he failed to show that he did not understand the immigration consequences of his plea. Tran contends, and we agree, that the *Tahl* form he signed was insufficient to warn him of the actual immigration consequences of his guilty plea, because it warned only that he "'may'" suffer those consequences. (*People v. Patterson* (2017) 2 Cal.5th 885, 895-896 [advisement that conviction "'may'" have adverse immigration consequences does not place defendants on notice that based on their particular circumstances, they face actual risk of suffering those consequences].) Tran fails to show, however, that his plea counsel did not properly advise him of the immigration consequences of his plea.

In support of his assertion that his plea counsel did not advise him, Tran provided his own testimony (both live and in a declaration), Nguyen's testimony (live and in a declaration), and Nieves's declaration. Each of these was significantly flawed.

First, Tran's self-serving testimony did not command trust. As noted, in his declaration, Tran claimed he "did not fully speak English" at the time of his plea and faulted his plea counsel for failing to provide a translator "during any stage" of his case. But in his live testimony, on cross-examination, he admitted he fully understood English at the time he entered his plea. The blatant falsehood in Tran's declaration, featuring a contrived charge against his former counsel, did not inspire confidence in the truth of his other allegations about counsel's conduct.

Next, Nguyen's testimony could not meaningfully support Tran's claim. Although they initially shared counsel, Nguyen later obtained separate counsel and did not claim to have been present when plea counsel discussed the plea agreement with Tran or when Tran made his plea in court.

Finally, Nieves's declaration provided no support for Tran's version of events. Nieves asserted plea counsel had told Dyer, "a previous member of [her] team," that he did not warn Tran of "proper immigration concerns." (Boldface and underscoring

6

omitted.)  This testimony constituted inadmissible hearsay evidence.  (Evid. Code, § 1200.)  And even if considered, Nieves's assertion was entitled to little weight.  Tran did not call either his plea counsel or Dyer to testify, nor did he provide a declaration from either.  Under these circumstances, Nieves's declaration was suspect.  (*Id.*, § 412 ["If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust"].)

Although the trial court observed the testimony of Tran and Nguyen and did not credit Tran's claims, we need not address the deference due to the court's findings.  Based on the evidence discussed above, we independently conclude that Tran did not carry his burden to show he did not meaningfully understand the immigration consequences of his plea.  Accordingly, the court correctly denied his motion.

## DISPOSITION

The trial court's order is affirmed.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


GOODING, J.

7